UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERELLE B.,
Plaintiff,

v.

SSA COMMISSIONER,
Defendant.

Case No. 25-cv-07697-PCP

**ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION**

Re: Dkt. Nos. 13, 17

Pursuant to 42 U.S.C. § 405(g), plaintiff Terelle B. seeks judicial review of the Commissioner of Social Security's decision denying his application for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Plaintiff asks the Court to reverse the Commissioner's decision and remand for further proceedings. For the following reasons, the Court reverses and remands.

**BACKGROUND**

In September 2012, plaintiff filed applications for disability insurance benefits and Supplemental Security Income, alleging physical and mental impairments beginning in 2010. On May 13, 2013, a California state agency evaluated plaintiff's claims on the Commissioner's behalf and determined that plaintiff was disabled. In 2017, the state agency conducted a continuing disability review (CDR) and determined that plaintiff was no longer disabled based on its finding that plaintiff's continued impairments were not severe enough to prevent him from engaging in substantial gainful activity.

After a hearing, an administrative law judge (ALJ) confirmed on October 7, 2019 that plaintiff was not disabled and issued an unfavorable decision on his applications. The Appeals Council granted plaintiff's request for review and remanded the case for the ALJ to consider

United States District Court
Northern District of California

additional evidence submitted after the ALJ's first hearing and to give further consideration to plaintiff's ability to work in light of his maximum residual functional capacity. On August 4, 2021, the ALJ issued another unfavorable finding, which was again vacated by the Appeals Council based on the ALJ's application of the incorrect regulations in evaluating the opinion evidence and the ALJ's failure to assess the severity of plaintiff's hearing loss. The ALJ issued a third unfavorable finding on May 1, 2023, which was also vacated and remanded by the Appeals Council due to inconsistencies between the ALJ's findings as to plaintiff's residual functional capacity and job prospects.

On November 5, 2024, the ALJ held a hearing at which plaintiff requested that the ALJ evaluate his alleged disability (and attendant eligibility for benefits) for the closed period from "October 19, 2020 through October 21, 2024." The ALJ issued a fourth unfavorable ruling on December 17, 2024, and the decision became final when the Appeals Council denied plaintiff's request for review on July 15, 2025. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

In her decision, the ALJ applied the five-step analysis used to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920c.[1]

---

[1] The five steps of the inquiry are:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5. Is the claimant able to do any other work? If so, then the claimant

At step one, the ALJ found that plaintiff was not engaged in substantial gainful activity.

At step two, the ALJ found that, since March 1, 2017, plaintiff had the following impairments: "left knee injury; right wrist injury/carpal tunnel syndrome; obesity; status post gunshot wound to the head with depressed skull fracture, subdural hematoma, and laceration; status post craniotomy and cranioplasty; unspecified depressive disorder; unspecified anxiety disorder; and alcohol use disorder, moderate." The ALJ also found that plaintiff's "alleged hearing loss is a nonsevere impairment."

At step three, the ALJ found that plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R., part 404, subpart P, appendix 1. With respect to plaintiff's physical limitations, the ALJ focused primarily on those associated with obesity and with plaintiff's recovery from a gunshot wound to the head that resulted in a depressed skull fracture, subdural hematoma, and laceration. The ALJ found that neither obesity nor the gunshot wound equaled the severity of a listed impairment, even in combination with other impairments.

In addition, the ALJ found that plaintiff's mental impairments did not satisfy the listing criteria under 12.03 [schizophrenia spectrum and other psychotic disorders], 12.04 [depressive, bipolar and related disorders], or 12.06 [anxiety and obsessive-compulsive disorders]. In making that finding, the ALJ considered whether the "paragraph B" criteria were satisfied. To satisfy the "paragraph B" criteria, a claimant's mental impairments must result in one extreme limitation or two marked limitations in one of four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. The ALJ determined that plaintiff's mental impairments did not meet the

---

is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

paragraph B criteria because he had a moderate limitation for (2) and (4), a mild limitation for (3), and no limitation for (1). The ALJ also found that the "paragraph C" criteria were not satisfied.

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity or] RFC." *Bray v. Comm'r of Social Security Admin.*, 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff had improved RFC since March 1, 2017. Though plaintiff "continued to have a severe impairment or combination of impairments," the ALJ found that he had the capacity to perform a limited range of light work as defined in CFR 404.1567(b) and 416.967(b). Specifically, the ALJ determined that he could sit for six hours per day, stand for four hours per day, and walk for four hours per day. Additionally, the ALJ stated that plaintiff requires a cane for distances greater than twenty-five feet and is limited to performing simple, routine tasks with only occasional public interaction. But the ALJ found that plaintiff "can frequently operate foot controls bilaterally" and "can frequently operate hand controls with the right dominant hand."

At steps four and five, the ALJ considered plaintiff's age, education, work experience, and RFC and found plaintiff capable of performing jobs that exist in significant numbers in the national economy, such as a housekeeper, routing clerk, and retail marker. As a result, the ALJ determined that plaintiff was not disabled from March 1, 2017, through the date of her order, December 14, 2024.

## LEGAL STANDARD

The Court reviews the Commissioner's decisions based only on "the pleadings and transcript of the record." 42 U.S.C. § 405(g). The record must include "the evidence upon which the findings and decision complained of are based." *Id.* The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." *Id.* As a result, the agency's decision must be upheld unless "it is not supported by substantial evidence or is based on legal error." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024). "Substantial evidence" is defined as evidence that the "reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole,

considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation modified).

**ANALYSIS**

Plaintiff challenges the Commissioner's decision on three grounds. First, plaintiff asserts that the ALJ "failed to properly follow Social Security policy in determining that [he] experienced medical improvement by not comparing his functioning at the time of improvement with the medical evidence at the time of the [comparison point decision]" in 2013. Second, plaintiff argues that the ALJ improperly discounted plaintiff's testimony about his mental-health symptoms. Third, plaintiff contends that the ALJ failed to properly evaluate the medical opinion evidence and that her finding as to plaintiff's RFC is therefore not supported by substantial evidence.

**I. The ALJ erred in evaluating whether plaintiff experienced medical improvement.**

Plaintiff asserts that the ALJ failed to properly follow Social Security policy when determining that plaintiff experienced medical improvement. The Court agrees.

"Medical improvement is defined as 'any decrease in the medical severity' of a recipient's impairment" from when the individual was most recently found disabled. *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting 20 C.F.R. § 404.1594(b)(1)). When assessing medical improvement, an ALJ must "compare the medical evidence used to determine the claimant was disabled with the medical evidence existing at the time of possible medical improvement." *Id.* at 876–77; *see also* 20 C.F.R. § 404.1594(c)(1). This standard applies both in "ordinary termination cases where the ALJ finds a claimant is disabled … in one decision and, in a later decision, finds the claimant has medically improved," as well as "closed period case[s]" in which the ALJ finds in the same decision "that [a claimant] had been disabled for a closed period of time and ha[s] since

medically improved." *Id.* at 876; *see also Judith Y. v. Saul*, No. 19-CV-5498-SP, 2020 WL 7024949, at *3 (C.D. Cal. Nov. 30, 2020). This case falls in the former category.

In ordinary termination cases like this one, the "relevant baseline for comparison" is "the 'most recent favorable medical decision'"—that is, the earlier ALJ decision finding a claimant to be disabled. *Attmore*, 827 F.3d at 876. Thus, to determine whether plaintiff experienced medical improvement, the ALJ was required to compare the medical evidence used to determine that plaintiff was disabled in 2013 with the medical evidence existing at the time of his possible medical improvement. *Id.* In accordance with the parties' practice, the Court refers to the 2013 decision as the "comparison point decision," or CPD.

The ALJ's discussion of the CPD was quite brief. In full, the ALJ stated:

> At the time of the CPD, the claimant had the following medically determinable impairments: anxiety disorder; affective disorder; psychotic disorder; and alcohol and substance use disorder. These impairments were found to result in a residual functional capacity that precluded the claimant from adhering to a schedule and completing a normal work week, and from working in close proximity to others. He was unable to engage in work-related activities in even unskilled work.

This discussion, which merely summarized the CPD's findings as to plaintiff's impairments and RFC, does not suffice. *See Keyes v. Saul*, No. 19-CV-00345-YGR, 2021 WL 2953232, at *6 (N.D. Cal. July 14, 2021) ("[I]t is not enough for the ALJ to simply compare the medically determinable impairments and RFC determination assessed at the time of the most recent favorable decision to those at present."). As noted above, the ALJ must analyze the medical *evidence* underlying those CPD findings and compare it to the current medical evidence. *See Attmore*, 827 F.3d at 876. The ALJ's decision makes no mention, at any point, of the evidence underlying the CPD's determination of plaintiff's medically determinable impairments and RFC (i.e., evidence pre-dating the date on which the CPD issued in 2013).

Of course, while an ALJ assessing possible medical improvement must compare the medical evidence supporting the CPD findings with the current medical evidence, there is no requirement that the ALJ do so expressly. *See id.* at 877. For that reason, the Ninth Circuit affirmed an ALJ's finding of medical improvement in *Attmore* where the ALJ had failed to

"specifically identify[] the baseline for comparison" or expressly compare the medical evidence supporting a finding of prior disability with the evidence of a current medical improvement. *See id.* The ALJ's decision had elsewhere extensively discussed the medical evidence supporting a finding of prior disability, such that the ALJ's later "references to 'improvement'" supported a "specific and legitimate inference that the ALJ compared the medical evidence from the date of possible improvement to the medical evidence used to determine that [the claimant] was disabled." *Id.* (citation modified).

Here, no such inference can be drawn. While medical records from 2013 and earlier are among the exhibits in the record, nothing in the ALJ's decision suggests that she reviewed that evidence or compared it to the medical evidence of improvement. The ALJ explained her finding of medical improvement as follows:

> The medical evidence supports a finding that, by March 1, 2017, there had been a decrease in medical severity of the impairments present at the time of the CPD. Treatment notes from the claimant's psychiatrist show that he was calm and cooperative; he denied auditory and visual hallucinations; he had a linear thought process; he had good insight and judgment; and he had intact impulse control (Exhibits 35F/7-9 and 38F/6, 25, 37, and 49).

This analysis focuses entirely on the evidence relevant to plaintiff's impairments and RFC at the time of possible improvement, not at the time of the CPD. And unlike in *Attmore*, no other part of the ALJ's decision demonstrates a meaningful review of the earlier medical evidence. Considering such evidence is necessary to determine whether any decrease in the medical severity of plaintiff's impairments was "based on changes (improvements) in the symptoms, signs and/or laboratory findings associated with [her] impairment(s)." *See* 20 C.F.R. § 404.1594(b)(1). So a decision that "does not indicate that [the ALJ] considered these records in finding medical improvement" is legally erroneous. *Zutphen v. Colvin*, No. 15-CV-02429-SI, 2016 WL 5358589, at *5–6 (N.D. Cal. Sept. 26, 2016).

This error is not harmless because "an ALJ may not move to the evaluation of a claimant's RFC without first finding medical improvement, and the Act does not authorize an ALJ to find medical improvement without making the comparison of prior and current medical evidence."

*Medina v. Colvin*, No. 14-CV-01967-DMR, 2015 WL 5448498, at *12 (N.D. Cal. Aug. 21, 2015); *see Rogelio C. v. O'Malley*, No. 23-CV-05446-RMI, 2025 WL 306218, at *4 (N.D. Cal. Jan. 27, 2025) ("[T]his matter must be remanded because the ALJ has not compared Plaintiff's current symptoms, signs, or laboratory results to his past ones, but rather to the broadly-stated impairment conclusions previously drawn by reviewing doctors.").

## II. The ALJ improperly discounted plaintiff's mental-health symptom testimony.

Plaintiff also argues that the ALJ erred by discounting his testimony as to his mental-health symptoms. Again, the Court agrees.

An ALJ must engage in a two-step analysis to evaluate the credibility of a claimant's testimony regarding subjective symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation modified). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Further, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding [subjective symptoms]." *Bunnell*, 947 F.2d at 345–46. The ALJ may consider inconsistencies between a claimant's testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature,

severity, and effect of the symptoms of which the claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

Here, plaintiff testified that he was unable to work during the relevant period due to his mental-health symptoms, which included negative and intrusive thoughts, anxiety, depression, overeating, and sometimes suicidal ideation. The ALJ determined at the first step that plaintiff's "current medically determinable impairments could reasonably be expected to produce some of the alleged symptoms[.]" But at the second step, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence." The ALJ's analysis in reaching that second-step conclusion does not sufficient to satisfy the "clear and convincing" standard. "Although the ALJ did provide a relatively detailed overview of [plaintiff]'s medical history" before making her credibility determination, "providing a summary of medical evidence is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). The Court must therefore look to the two specific reasons offered by the ALJ for finding plaintiff's mental-health symptom testimony to be only partially credible. *See id.* at 1278 ("[W]e are constrained to review the reasons the ALJ asserts." (quoting *Brown-Hunter*, 806 F.3d at 492)). Neither supplies a clear and convincing basis for discounting plaintiff's testimony.

First, the ALJ pointed to the treatment notes of a psychiatrist, Dr. William Portman, who provided telehealth care to plaintiff from April to May 2021 and again from February to April 2022. The ALJ reasoned that plaintiff's testimony that his depression, anxiety, and other mental-health symptoms prevented him from working were inconsistent with Dr. Portman's statements that plaintiff "was calm and cooperative, denied auditory and visual hallucinations, had a linear thought process, had good insight and judgment, and had intact impulse control." Yet the ALJ failed to address Dr. Portman's countervailing statements—in the very treatment notes upon which the ALJ relied—that plaintiff "does suffer from significant mental illness," continued to report "significant anxiety," and had "[s]evere [f]unctional [i]mpairment" in in his "[s]ocial [r]elations"

that was "due to mental health symptoms" and caused him to "avoid[] most social contact." An ALJ may not "selectively rel[y] on some entries" while ignoring others "that indicate[] continued, severe impairment." *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001).

Even if Dr. Portman's treatment notes suggest that plaintiff's mental-health symptoms were less severe than plaintiff's later testimony suggested, the treatment notes reflect only one part of the broader picture. To be sure, an ALJ may rely on specific examples to explain why a claimant's subjective-symptom testimony is not credible, but "the data points [she] choose[s] must in fact constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *See Garrison*, 759 F.3d at 1018. Here, the administrative record contains evidence that post-dates the treatment notes on which the ALJ's credibility determination relied and suggests that Dr. Portman's reports were not indicative of a broader change. For example, a psychiatric examination of plaintiff in 2024 noted that he presented with depressive symptoms, suffered from sleep disturbances and racing thoughts, and consequently "ha[d] significant impairment" in both his "[s]ocial [r]elations" and "[o]ccupation," causing him to be "unable to work due to [his] symptoms." Another 2024 treatment note similarly stated that plaintiff "present[ed] with severe symptoms of depression" and diagnosed plaintiff as having "[m]ajor depressive disorder, … severe" and "[g]eneralized anxiety disorder." The ALJ did not meaningfully contend with this evidence in discounting plaintiff's subjective-symptom testimony based on Dr. Portman's earlier treatment notes. And the fact that plaintiff may have exhibited less severe symptoms when he saw Dr. Portman in April to May 2021 and February to April 2022 does not detract from the later return of his severe symptoms. As the Ninth Circuit "ha[s] emphasized while discussing mental health issues":

> [I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Id.* at 1017.

Second, the ALJ discounted plaintiff's subjective mental-health testimony as "inconsistent with treatment notes where [he] reported that prescribed medication was helpful." This fails to satisfy the "clear and convincing" standard for the reasons just discussed. The only treatment notes cited by the ALJ as inconsistent with plaintiff's symptom testimony are from a narrow period between May 2021 and February 2022. The ALJ failed to explain how those treatment notes indicate a broader improvement in plaintiff's symptoms in view of later evidence noting the return of his severe mental-health symptoms and his declination to continue using psychotropic medications for religious reasons. *See Quan D. v. Comm'r of Soc. Sec.*, No. 23-CV-5648, 2024 WL 808109, at *3 (W.D. Wash. Feb. 27, 2024) ("The [Ninth] Circuit has recognized that when a claimant suffers from mental health problems, the claimant's declination of needed psychotropic medications is not grounds to discount the severity of the claimant's condition or symptoms."); *see also Smolen*, 80 F.3d at 1284 (holding that an ALJ may not use a claimant's failure to take medication as a basis for rejecting symptom testimony where the claimant provides good reasons for the failure).

Finally, even if Dr. Portman's notes and the other treatment notes underlying the ALJ's credibility determination indicated improvement, that evidence documented improvement only from April 2021 onward. It therefore cannot provide clear and convincing reasons for the ALJ's determination that plaintiff's mental-health disability ceased as of 2017. *See Smith v. Kijakazi*, 14 F.4th 1108, 1116 (9th Cir. 2021) ("[T]he ALJ…erred by seeking only to reach a single disability determination for the entire multi-year period, thereby failing to consider whether Smith was disabled for only a qualifying, early portion of that time."). And as the ALJ acknowledged, evidence from 2020 and earlier, including plaintiff's "self-inflicted gunshot wound to the head" in October 2020, is consistent with his testimony concerning his subjective mental-health symptoms prior to April 2021.

As a result of these errors in evaluation, the ALJ failed to show by a "clear and convincing" standard that the severity of plaintiff's mental health symptoms could be discounted in 2017 or thereafter.

### III. The Court need not address whether the ALJ properly evaluated the medical opinion evidence and plaintiff's residual functioning capacity.

Plaintiff also challenges the ALJ's evaluation of the medical-opinion evidence and resulting finding as to plaintiff's RFC.

Many of plaintiff's arguments incorrectly suggest that review of the medical-opinion evidence in this case is governed by the Commissioner's revised regulations in 20 C.F.R. § 404.1520c, which apply to cases filed after March 27, 2017. The revised regulations provide that "'[t]he most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant objective medical evidence,'" and "[c]onsistency means the extent to which a medical opinion is 'consistent with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (citation modified) (quoting 20 C.F.R. § 404.1520c(c)(1)–(2)). Because plaintiff filed his claim before March 27, 2017, the revised regulations do not apply here. *Ha v. King*, No. 23-3383, 2025 WL 416817, at *1 n.1 (9th Cir. Feb. 6, 2025); *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024). Instead, the ALJ's review is governed by the prior framework, which "weigh[s] medical opinions based on the extent of the doctor's relationship with the [plaintiff]" using "a three-tiered hierarchy," with treating physicians "[a]t the top." *Woods*, 32 F.4th at 789. The ALJ thus did not err by using the three-tiered framework rather than the revised regulations.

The Court need not resolve whether the ALJ's application of the three-tiered framework was proper. Because this Court remands for further proceedings, the ALJ must reassess all medical evidence and opinions on remand. *See* Program Operations Manual System (POMS) GN 03106.036 Court Remand Orders, https://secure.ssa.gov/poms.nsf/lnx/0203106036 (last visited July 13, 2026) (a court order vacating a prior decision and remanding the case voids the prior decision and thus returns the case to the status of a pending claim). That will, as a result, necessitate reconsideration of the medical-opinion evidence and a new finding as to plaintiff's RFC. The Court therefore does not address those issues at this time.

## IV. The Court remands this matter for further administrative proceedings.

In his complaint, plaintiff asks the Court to vacate the Commissioner's decision and remand for an immediate award of benefits. But plaintiff abandons that request in his opening and reply briefs, instead requesting only that the case be remanded for further administrative proceedings. The Court agrees that remand for further proceedings is appropriate here. "An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *See Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017), *as amended* (Jan. 25, 2018). An automatic award is appropriate only where "no useful purpose would be served by further administrative proceedings," such as "where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome." *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021. But an immediate award of benefits is inappropriate if there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated. *See Benecke v. Barnhart*, 379 F.3d 587, 595–96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179–80 (9th Cir. 2000).

Here, outstanding issues remain concerning plaintiff's medical improvement, the severity of his mental impairments, his resulting RFC, and his ability to perform jobs that exist in significant numbers in the national economy, necessitating a remand for further administrative proceedings. On remand, the ALJ should reevaluate the medical opinion and subjective-symptom evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should conduct a new sequential analysis, reassess plaintiff's RFC, and, if necessary, take additional testimony from a vocational expert that includes all limitations credited by the ALJ.

## CONCLUSION

For the foregoing reasons, the Court orders that this matter be REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: August 5, 2026

P. Casey Pitts
United States District Judge